IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED
SEP 0 3 2004
Michael N. Milby
Clerk of Court

| | |
|---|---|
| DIRECTV, Inc., § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. B-03-214 |
| § | |
| LEONEL MARTINEZ, § | |
| Defendant. § | |

## PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT LEONEL MARTINEZ'S MOTION FOR SUMMARY JUDGMENT

Plaintiff DIRECTV, Inc. ("Plaintiff" or "DIRECTV") files this Response and Brief in Opposition to Defendant Leonel Martinez's ("Defendant" of "Martinez") Motion for Summary Judgment ("Motion"). In support thereof, DIRECTV shows as follows.

## I. INTRODUCTION

DIRECTV filed the instant action against Defendant arising out of his illegal interception of DIRECTV's satellite programming and has asserted claims for common law conversion and for violations of the Cable Communications Policy Act of 1984, 47 U.S.C. § 521, *et seq.*, the Electronic Communications Policy Act, 18 U.S.C. § 2511 and section 123 of the Tex. Civ. Prac. & Rem. Code.[1] In this case, DIRECTV seeks legal and equitable relief from the Defendant.

On or about August 12, 2004, Defendant filed a Motion for Summary Judgment (the "Motion") that seeks dismissal of each of Plaintiff's claims because, he argues, DIRECTV has not proffered evidence of interception of its signal. Defendant asserts in his Motion that because there is no direct evidence of actual interception of DIRECTV's signal, then

---

[1] DIRECTV will dismiss voluntarily its claims for conversion and under 18 U.S.C. § 2512. As such, DIRECTV will not address in this Response Defendant's challenges to those particular claims.

its claims, and in some cases its standing to assert those claims, must fail as a matter of law.[2]

It is significant to note that Defendant has proffered no summary judgment evidence, such as an affidavit, to support his position that he never used the device he purchased for its intended purpose—to intercept illegally and surreptitiously DIRECTV's satellite programming. DIRECTV, on the other hand, brings forth in this Response competent summary judgment proof that shows, or at least raises an inference, that Defendant *did* intercept or attempt to intercept DIRECTV's satellite programming. Accordingly, and as fully set forth below, Defendant's Motion should be denied in its entirety.

DIRECTV intends to use the following evidence in this Response: Affidavit of James F. Whalen, attached as Exhibit A; Affidavit of Bill Gatliff, attached as Exhibit B; Affidavit of Carol Fong-Hilton, attached as Exhibit C; a summary of the information regarding Defendant's purchase record, attached as Exhibit D; true and correct copies of unreported decisions, attached as Exhibit E and true and correct copies of Defendant's answers to DIRECTV's written discovery attached as Exhibit F.

## II. DIRECTV'S ARGUMENTS AND AUTHORITIES IN OPPOSITION TO THE MOTION
### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also* Christopher Village, LP v. Retsinas, 190 F.3d 310, 314 (5th Cir. 1999). When considering a motion for summary

---

[2] Based on lack of evidence of interception, Defendant seeks dismissal of DIRECTV's claims under 47 U.S.C. § 605 *et seq.*, 18 U.S.C. § 2511 and section 123 of the Tex. Civ. Prac. & Rem. Code. Based on the same theory, Defendant also challenges DIRECTV's standing as an "aggrieved person" to pursue claims under section 605, since that term affords a party a right to sue only for an "intercepted communication." *See* 47 U.S.C § 605(d)(6). With respect to evidence of interception, it should be noted that 47 U.S.C. § 605(e)(4) does not require that DIRECTV demonstrate interception of its signal. Section 605(e)(4) permits DIRECTV to pursue defendants who have, among other things, modified, distributed, sold, assembled or transported illegal devices. Further, section 123.002 permits DIRECTV to pursue a defendant who even "attempts to intercept" a communication.

PLTS. RESP. & BRIEF IN OPPO. TO DEFS. MT. FOR SUM. JUDG.                                    PAGE 2

judgment, the court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See* Samuel v. Holmes, 138 F.3d 173, 176 (5th Cir. 1998); Texas v. Thompson, 70 F.3d 390, 392 (5th Cir. 1995). Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case only after an adequate time for discovery. *See* Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Wright v. Mitchell, 2001 U.S. Dist. Lexis 4007 (N.D. Tex. March 1, 2001). Further, a motion for summary judgment is properly granted only when the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict. Waymire v. Harris County, Texas, 86 F.3d 424, 427 (5th Cir. 1996).

## B. EVIDENCE SUPPORTING INFERENCE OF DEFENDANT'S INTERCEPTION OF DIRECTV's SATELLITE SIGNAL

### DIRECTV's Satellite Programming and Conditional Access System

DIRECTV is the nation's leading direct broadcast satellite system, delivering over 225 channels of television and other programming to more than 12 million homes and businesses in the United States. *Exhibit A, pp. 1-2*. DIRECTV encrypts – electronically scrambles – its satellite transmissions to provide security for and prevent unauthorized viewing of its satellite television programming. *Id., p. 2*. DIRECTV offers its television programming to residential and business customers on a subscription and pay-per-view basis only. *Id.* Each customer is required to obtain from DIRECTV a DIRECTV Access Card ("Access Card") and other system hardware: a small satellite dish, a DIRECTV receiver and cabling to connect these components. *Id.*

Upon activation of the Access Card by DIRECTV, the customer can receive and view those channels to which the customer has subscribed or otherwise made arrangement to purchase from DIRECTV. *Id.* On occasion, DIRECTV sends out certain signals in order to combat the use of unauthorized Access Cards. These signals, known as Electronic

Counter Measures ("ECMs"), locate illegally modified cards and disable them electronically so they can no longer receive DIRECTV programming for free. *Id., p. 5.*

### DIRECTV's Raid on The Computer Shanty

Several individuals and companies have engaged in the manufacture and sale of illegal equipment used to circumvent DIRECTV's encryption technology. *Id., p. 4.* On or about December 1, 2001, DIRECTV executed a Writ of Seizure, with the assistance of local law enforcement, at the residence of Scott Gray, who owned and operated "The Computer Shanty." *Id.* The Computer Shanty was located physically in El Paso, Texas and at times relevant to this case was an enterprise focused on distributing electronic devices primarily designed for the surreptitious interception of satellite communications broadcast by DIRECTV. *Id.* Subsequent to that raid, DIRECTV came into possession of a substantial body of sales records, shipping records, email communications, credit card receipts and other records. *Id., p. 5.* Those records evidence Defendant's purchase of a Netsignia 210 Programmer and Scorpion Wildthing II Unlooper on or about September 4, 2000. *Id., pp. 4-5; Exhibit D; See also, Exhibit F*, response to request for Admission No. 6.[3]

### Martinez's Pirate Access Devices and Their Uses

The devices Defendant has acknowledged purchasing are commonly used by individuals to intercept illegally DIRECTV programming.[4] *Id., pp. 5-6; Exhibit B.* One of the devices purchased by Defendant, the Scorpion Wildthing II Unlooper, is primarily designed, marketed, and distributed to be used in order to gain unauthorized access to

---

[3] In response to written discovery, Defendant admits that he purchased the devices at issue but denies that he received the products. *See Exhibit F*, responses to Requests for Admissions No. 6 and No. 8. However, in responding to interrogatories, when asked about the location of the devices now, the Defendant responds that they are in the trash. *See Exhibit F*, response to Interrogatory No. 10(d). If Defendant never received the devices, he could not have thrown them away or have any way of knowing that they are now in the trash.

[4] In his discovery responses, Defendant has admitted purchasing from the Computer Shanty the specific Pirate Access Devices identified in the Complaint. *See Defendant's Response Nos. 5-6 to Plaintiff's Request for Admission.* Defendant's equivocal position on his receipt of those specific devices, however, should be disregarded, as he specifically denies receiving the devices, yet, at the same time, claims to have discarded the devices in the "trash." *See Defendant's Response No. 8 to Plaintiff's Request for Admission; see also Defendant's Interrogatory Response no. 10(d).*

PLTS. RESP. & BRIEF IN OPPO. TO DEFS. MT. FOR SUM. JUDG.                                   PAGE 4

DIRECTV satellite programming without payment to DIRECTV.[5] *Id.* Indeed, DIRECTV is unaware of any legitimate commercial or private use for unloopers. Instead, the "unlooper" is designed to restore functionality to illegally modified DIRECTV access cards that were disabled by misuse or by DIRECTV's electronic security measures commonly referred to as Electronic Counter Measures or "ECMs." *Id.* An ECM is sent electronically by DIRECTV by satellite and is intended to disable illegally modified DIRECTV access cards that are being used to receive DIRECTV programming without authorization. Once these cards are disabled, (or are "looped" as the condition is known), they no longer allow free viewing of DIRECTV programming without the additional use of other electronic devices or equipment to return the illegal functionality. *Id.*

Individuals interested in *continuing* the illegal receipt of DIRECTV programming use an unlooper to *restore functionality* to a disabled card, thus allowing the access card to once again receive DIRECTV programming for free. *Id.* Indeed, the term "unlooper" was coined specifically to refer to devices that restore functionality to "looped" pirated DIRECTV access cards. Additional software for use with the unlooper was widely available on the internet for download and use from websites like the one from which Defendant purchased his unlooper. *Id.*

The purchase and use of an unlooper is a clear indication of a customer's eagerness to continue illegal access to DIRECTV television programming without payment to DIRECTV. Furthermore, purchase of that device indicates that the person already possessed one or more illegally modified DIRECTV access cards. *Id.* There is no reason to purchase an unlooper unless the purchaser is in possession of a DIRECTV Access Card that has been hacked and disabled by an ECM. *Id.* Therefore, it follows that Defendant possessed an illegally modified Access Card and began receiving DIRECTV's transmissions

---

[5] It should be noted that an HU loader and an unlooper are the same device, simply different names. See Exhibit B-1, Expert Report and Disclosures of Bill Gatliff, page 8 of 15.

without authorization prior to the purchase of the Pirate Access Devices in September of 2000. *Id.* That chronology is certainly consistent with his purchase in February of 2000 of his DIRECTV equipment. *Id.; Exhibit C (see discussion infra).*

The other device purchased by Martinez, the Netsignia 210 Programmer, functions as a programmer, which can be used and is distributed to be used to permit the illegal programming of – writing of code to – valid DIRECTV access cards for the sole purpose of obtaining access to DIRECTV Satellite Programming without paying DIRECTV. Based on the foregoing, this Court should find or infer that Martinez used his devices for the purpose they were intended—to steal DIRECTV programming. *Id.*

Finally, Defendant's persistent denials in his Motion—statements that are <u>not</u> corroborated by a sworn affidavit or other summary judgment proof—that he did not "possess the computer equipment necessary to circumvent Plaintiff's encryption technology" is contradicted by the evidence and his own admissions in this case. The only "computer equipment" required to operate Defendant's Pirate Access Devices is a computer and some type of access to the internet to download freely available programs that work in conjunction with the devices to pirate DIRECTV's signal. *See Exhibit A, p. 5; Exhibit B.* DIRECTV's competent summary judgment evidence (as well as his own concessions) demonstrate that Defendant does in fact have a computer with access to the internet, as (1) he ordered his Pirate Access Devices from the Computer Shanty via the internet using the email address <u>nukman1 @hotmail.com</u>; (2) has admitted to having *two* internet service provider accounts with CBC Yahoo and AOL at his home during the times relevant to this action; and (3) has admitted to having at this residence during all pertinent times a "Ceneric Computer, IBM Compatible." *See Exhibit D; See Exhibit F, Defendant's Response No. 17(c)-(d) to Plaintiff's First Set of Interrogatories.*

**Martinez's DIRECTV Pending Account**

Martinez's DIRECTV account history is further compelling evidence of his involvement in satellite piracy. When DIRECTV equipment is purchased from an authorized retailer, that retailer obtains certain information regarding the customer and forwards it to DIRECTV for purposes of creating what is known as a "pending" account. *Exhibit A, pp. 6-7*. At that point, the consumer must contact DIRECTV to activate their account by choosing a programming package and providing for a method of payment. *Id.* The consumer must also verify certain information about himself or herself on the pending account, such as home address, home telephone number and, if he or she consents to let DIRECTV obtain a credit report, social security number. *Id.* After DIRECTV receives the required customer information, DIRECTV will activate the customer's account. *Id.*

However, not everyone who purchases a DIRECTV system from an authorized seller contacts DIRECTV to activate their account. In fact, persons who want to steal signals and avoid detection often purchase DIRECTV receiving equipment but never activate their account with DIRECTV. *Id.* Instead, they use illegal access devices in conjunction with DIRECTV receiving equipment to obtain DIRECTV satellite programming without paying for it. *Id.*

In this case, account records for DIRECTV show that on or about February 8, 2000, Defendant purchased a DIRECTV system (consisting of a satellite dish, a receiver and an access card) from Radio Shack in Ft. Worth, TX. *Exhibit C*. Thus, as of that specific date, Defendant had all of the equipment required to receive DIRECTV's satellite signal. However, Defendant never contacted DIRECTV to activate this account to begin receiving authorized satellite programming.[6] *Exhibit A, pp. 6-7*. Thus, unless used in conjunction his Pirate Access Devices he received in September 2000, his DIRECTV system equipment

---

[6] Similarly, January of 2002, Defendant purchased yet another DIRECTV system that he never subscribed. Finally, in November of 2002, Defendant purchased a DIRECTV system and subscribed it on the same date. *See Exhibit C*.

PLTS. RESP. & BRIEF IN OPPO. TO DEFS. MT. FOR SUM. JUDG.                    PAGE 7

would have been completely useless. *Id.*

### Evidence of the Marketing of the Devices

Considering the content of the Computer Shanty website, Defendant can hardly deny that the devices he purchased are not specifically sold and marketed for purposes of illegally receiving DIRECTV programming. *Id., p. 6.* For instance, those web pages explicitly refer to proprietary DIRECTV "H Cards" and "Black Sunday"[7] cards. *Id.* The web site also refers to "Card Cleaning" programs, other known Pirate Access Devices, such as "emulators" and "unloopers" and posts customer comments that refer to "emulating" or "auxing" a DIRECTV Access Card. *Id. See also, Exhibit B,* Expert Report and Disclosures of Bill Gatliff, page 12 of 15. Thus, the manner in which the Computer Shanty markets and sells its devices to customers such as Defendant is further evidence from which a judge or jury should find or infer that Martinez used his Pirate Access Devices to receive unauthorized DIRECTV programming. *Id.*

Cumulatively, therefore, the following facts support a finding of, or at a minimum, an inference in favor of, Defendant's theft of its satellite programming:

- Defendant created a pending account with DIRECTV and thus had all of the equipment required to receive satellite programming, specifically, a satellite dish, a receiver and an Access Card <u>prior to his purchase of his Pirate Access Devices</u>. *See Exhibit A, p. 2; Exhibit C.*

- Defendant purchased and received from the Computer Shanty an unlooper that is solely used for the unlawful interception of DIRECTV's programming, and in fact, is used to ***restore functionality*** to an already illegally modified access card. *Exhibit A, pp. 5-6; Exhibit B.* Defendant also purchased and received a programmer, a device that can be used to receive DIRECTV programming without authorization. *See Exhibit B; Exhibit A, pp. 5-6.*

- The business from which Defendant purchased his device, the Computer Shanty,

---

[7] "Black Sunday" refers to a particularly effective ECM DIRECTV initiated on January 21, 2001 (Superbowl Sunday) that caused an irreversible change to a certain component of illegally modified access cards. That ECM, referred to as "Black Sunday" by satellite pirates, was targeted at illegally modified access cards and resulted in the disabling of an unknown number of illegally modified cards that were being used to steal DIRECTV's television programming. Black Sunday was extremely effective and left a large number of satellite pirates and would-be satellite pirates without an ability to steal DIRECTV's programming. See Exhibit B, Expert Report and Disclosures of Bill Gatliff, page 7 of 15.

   markets those products specifically for purposes of stealing DIRECTV programming. *Exhibit A, p. 6.*

- Defendant's failure to activate his pending account, coupled with his purchase of his Pirate Access Devices, indicates that he was involved in satellite programming theft. *Exhibit A, pp. 6-7; Exhibit C.*

Notwithstanding the foregoing, the crux of the instant Motion is that there is insufficient evidence of actual or attempted interception of DIRECTV's signal. Defendant's argument, though, wholly overlooks the necessary and probative use of circumstantial evidence to prove certain ultimate facts, such as in a crime or civil wrong that is committed privately. *See e.g.*, Apple Computer, Inc. v. Microsoft, 35 F.3d 1435, 1442 (9th Cir. 1994) (copyright theft); McElveen v. McElveen, 506 S.E.2d 1, 7 (S.C. Ct. App. 1998 (adultery); United States v. Fisher, 912 F.2d 728, 730 (4th Cir. 1990) (conviction for intent to sell narcotics may be based purely on circumstantial evidence that the defendant possessed more drugs than she could have personally used); Walker v. Darby, 911 F.2d 1573, 1578 (11th Cir. 1990) (circumstantial evidence sufficient to prove wiretap claim, including actual interception).

In a cable television piracy case, at least one Court has presumed, without any direct proof, an illegal use based on possession alone of cable descrambling equipment. Community Televisions Systems, Inc. v. Caruso, 134 F.Supp. 455 (D. Conn. 2000), *aff'd. in relevant part*, 284 F.3d 340 (2d Cir. 2002). In Caruso, TCI was a cable television supplier, and the defendants purchased broadcast descramblers from a manufacturer and seller of descramblers. Id. at 457. Because the devices were sold to and sent to the defendants, the court concluded that "the most reasonable inference is that . . . the descrambler could be used for its intended purpose, namely to receive cable services over TCI's cable system." Id. at 160. Significantly, the court found that "the defendants appear to fail to recognize the weight that is properly given circumstantial evidence." Id. at 461.

In the arena of satellite theft, courts across the nation are relying on the principles outlined in <u>Caruso</u> to presume use of a pirate access device based on proof of possession. *See, e.g.* <u>DIRECTV v. McCool</u>, No. 3:03-0013, in the U.S. District Court, Middle Dist., TN, Nashville Div., (citations at n. 3, p. 14 to other DIRECTV cases recognizing presumptive use of pirate access device omitted), a true and correct copy of which is attached hereto as Exhibit E. In <u>McCool</u>, the Defendant owned DIRECTV equipment and purchased a "White Viper Reader-Writer Unlooper Combo." The Defendant in <u>McCool</u>, like Martinez here, "contends that DIRECTV has failed to produce direct evidence of Defendant's unlawful interference with DIRECTV's satellite transmission. However, DIRECTV is not required to produce such proof. The undisputed purchase of the device in Defendant's name using his credit card, his computer, his email address, and his shipping address creates a rebuttable presumption of use." *See Exhibit E, <u>McCool</u>, p. 14 (citations omitted); see also* <u>DIRECTV v. Albright</u>, 2003 U.S. Dist. LEXIS 23811, *5 (E.D. Pa., Dec. 9, 2003) ("Defendant purchased one of these [Pirate Access Devices], leading to the natural inference that he used it to pirate DIRECTV television transmissions for his own personal benefit.").

In other satellite theft cases, DIRECTV has successfully defeated Summary Judgment motions by proffering circumstantial evidence similar to DIRECTV's proof in the instant case which raised an inference of interception. In <u>DIRECTV v. Karpinsky</u>, 274 F.Supp. 2d. 918 (E.D. Mich. 2003), a Motion for Summary Judgment predicated on no direct evidence of interception was defeated by (1) demonstrating that the defendant purchased and received pirate devices; (2) submitting statements by DIRECTV's expert that such devices have no use other than pirating satellite signals; and (3) submitting evidence that the defendant had the necessary equipment to intercept DIRECTV's programming. <u>Karpinsky</u>, 274 F.Supp. 2d at 927. The Court concluded that based on evidence that the Defendant

had acquired the equipment required for satellite reception, coupled with his purchase of a pirate device and the affidavit testimony concerning the uses of those devices, there was sufficient evidence to defeat summary judgment.

In yet another case, DIRECTV has survived dismissal of its claims with proof identical to the case at bar. DIRECTV v. Miller, 2003 U.S. Dist. LEXIS 24958 (U.S. Dist. Fla. Nov. 20, 2003). In Miller, the defendant purchased two unloopers. Id. at *2. The Court in that case recognized the folly of requiring DIRECTV to produce "eyewitness testimony or videotape evidence of Defendant sitting in his living room watching DIRECTV for free" and denied the Motion for Summary Judgment based on the Defendant's purchase of the pirate device alone, reasoning that a reasonable jury could conclude that Defendant stole DIRECTV's programming. Id. at *9. In support of its inference of signal theft, the Court acknowledged that "[b]ased on their life experience, a jury could reasonably assume that people buy electronic equipment such as televisions, computers, or (in the case of Defendant) satellite piracy unloopers when they plan to use such equipment. It would be a strange world, after all, if people regularly bought such equipment and then put it in the closet to collect dust." Id. at *10; *see also* DIRECTV, Inc. v. Spokish, 2004 U.S. Dist. LEXIS 4092 (U.S. Dist. Court Fl., Feb. 19, 2004); *see also* DIRECTV v. Murray, 2004 U.S. LEXIS 5670, * 22 ("Evidence that defendant purchased electronic devices which are only useful for pirating plaintiff's satellite signal, together with evidence that defendant had all other means necessary to pirate plaintiff's signal, is circumstantial evidence that defendant actually pirated plaintiff's signal.").[8]

---

8 Finally, Defendant's reliance on DIRECTV v. Bush, Case No. H-03-1765, U.S. District Court, Southern District of Texas, Houston, TX (cited at ¶ 25 in the Motion) is wholly misplaced, since DIRECTV in Bush, unlike the case at bar, offered no evidence supporting a finding, or an inference of, Defendant's interception of DIRECTV's signal. Because DIRECTV in this case has offered a significant amount of evidence from which a judge or jury could reasonably find or infer that the Defendant did intercept DIRECTV's signal, the Bush decision is distinguishable from the present case and should thus be disregarded entirely.

As in the cases described above, this Court should also find or infer evidence of actual signal interception and deny Defendant's Motion. It is undisputed that the Defendant purchased and received devices that are capable of intercepting DIRECTV signals from an internet vendor that markets its specific products for use in signal interception *(Exhibit A, pp. 6-8; Exhibit B)*; that he has all of the equipment necessary to receive satellite programming *(Exhibit C; Exhibit A, p. 2)*; and that, despite purchasing DIRECTV equipment, he never activated his pending account *(Exhibit A, pp. 6-7)*. Based on the totality of the evidence, this Court should find or infer Defendant's attempted or actual interception of DIRECTV programming, thereby precluding dismissal of all of Plaintiff's statutory claims in this case.

## III. CONCLUSION

The evidence proffered by DIRECTV in this Response supports a direct finding or a reasonable inference that Martinez used his Pirate Access Devices for the purpose they were manufactured, marketed and sold to the public—to receive free DIRECTV programming. Because DIRECTV's summary judgment proof creates a fact issue with respect to Defendant's interception of its signal, then Plaintiff's claims under 47 U.S.C. § 605 *et seq.* (as well as its standing to assert claims thereunder as a "aggrieved person"), 18 U.S.C § 2511 and section 123 *et seq.* of the Tex. Civ. Prac. & Rem. Code, as well as its claim for injunctive relief, should survive Defendant's Motion for Summary Judgment.

Respectfully submitted,

RODRIGUEZ, COLVIN, CHANEY & SAENZ, LLP

By: /s/ Chris Moore

**Lecia L. Chaney**
Attorney in Charge
Federal ID No. 16499
Texas State Bar No. 00785757
**Christopher E. Moore**
State Bar No. 24011075
Fed. I.D. #36611

1201 E. Van Buren St.
P.O. Box 2155
Brownsville, Texas 78522
Telephone: (956) 542-7441
Telefax    : (956) 541-2170

ATTORNEY IN CHARGE FOR PLAINTIFF,
DIRECTV, INC.

OF COUNSEL:

GREER, HERZ & ADAMS, LLP

**Joe A.C. Fulcher**
Federal ID No. 14126
St. Bar No. 07509320
**Kelly-Ann F. Clarke**
Federal ID No. 27195
St. Bar No. 24027929
**Robert A. Swofford**
Federal ID No. 19403
St. Bar No. 00791765
**Joseph R. Russo, Jr.**
Federal ID No. 22559
St. Bar No. 24002879
One Moody Plaza, 18th Floor
Galveston, Tx  77550
(409) 797-3200 (telephone)
(409) 766-6424 (telecopier)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record by first class mail, certified mail, return receipt requested, facsimile transmission, and/or hand delivery pursuant to the Federal Rules of Civil Procedure on this the 3rd day of September, 2004.

**Juan "Sonny" Palacios, Jr.**
Garcia, Quintanilla & Palacios
5526 North Tenth Street
McAllen, Tx  78504
*Attorney for Defendant Leonel Martinez*

_____
Lecia L. Chaney