**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| DIRECTV, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:03-0013 |
| | ) | Judge Echols |
| FRANK MCCOOL, | ) | |
| | ) | |
| Defendant.[1] | ) | |

## ORDER

For the reasons explained more fully in the Memorandum entered contemporaneously herewith, the Court rules as follows:

1.  Defendant's Motion for Summary Judgment (Docket Entry No. 26) is hereby GRANTED IN PART and DENIED IN PART. In particular, Defendant's Motion is GRANTED as to Count V, Possession of a Pirate Access Device in Violation of 18 U.S.C. § 2512(1)(b). Count V is therefore DISMISSED WITH PREJUDICE. Defendant's Motion is DENIED, however, as to Counts I, II, III, IV, and VI of the Complaint;

2.  Defendant's Motion to Strike Expert Report and Bar Expert Testimony (Docket Entry No. 35) is hereby DENIED; and

3.  Defendant's Motion for Permission to File a Supplemental Reply Brief (Docket Entry No. 39) is hereby DENIED.

---

[1]Initially, there were four Defendants in this action. On March 10, 2003, the Magistrate Judge granted Defendants Debbie Logue and Jess Tolbirt's Motions to Sever. (Docket Entry No. 19). On April 16, 2003, the Court entered an Order dismissing the action against Defendant Chuck Pierce pursuant to the Notice of Voluntary Dismissal filed by Plaintiff on April 7, 2003. (Docket Entry No. 22). The current caption reflects these rulings.

This document was entered on
the docket in compliance with
Rule 58 and / or Rule 79 (a).

FRCP. on 6-24-04 By 

1





**EXHIBIT**

**"E"**

This case is hereby returned to the Magistrate Judge for further proceedings consistent with Local Rule 11.

It is so ORDERED.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DIRECTV, INC.,                     )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )      No. 3:03-0013
                                   )      Judge Echols
FRANK MCCOOL,                      )
                                   )
        Defendant.[1]              )

## MEMORANDUM

Presently pending before the Court are the following motions by Defendant: Motion for Summary Judgment (Docket Entry No. 26), Motion to Strike Expert Report and Bar Expert Testimony (Docket Entry No. 35), and Motion for Permission to File a Supplemental Reply Brief (Docket Entry No. 39).

## I.  INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff DIRECTV, Inc. ("DIRECTV") is a direct satellite broadcast system delivering television and other programming to its subscribers. DIRECTV's satellite transmissions are encrypted, or electronically scrambled, to prevent unauthorized and unpaid viewing of its programming. DIRECTV's transmissions may be lawfully viewed only by its customers on a subscription or pay-per-view basis.

---

[1]Initially, there were four Defendants in this action. On March 10, 2003, the Magistrate Judge granted Defendants Debbie Logue and Jess Tolbirt's Motions to Sever. (Docket Entry No. 19). On April 16, 2003, the Court entered an Order dismissing the action against Defendant Chuck Pierce pursuant to the Notice of Voluntary Dismissal filed by Plaintiff on April 7, 2003. (Docket Entry No. 22). The current caption reflects these rulings.

1

This document was entered on
the docket in compliance with
Rule 58 and / or Rule 79 (a).

FRCP, on_____By_____



This is an action brought by DIRECTV against individuals who allegedly purchased a signal pirating device designed to defeat DIRECTV's encryption security measures, allowing the individuals to decrypt, or unscramble, DIRECTV's signal and view broadcasts without paying the subscription or pay-per-view fees. DIRECTV seeks relief under the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605(a), for unauthorized reception of satellite signals (Count I); under the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), for unauthorized interception of electronic communications (Count II); under the Tennessee wiretapping statute, Tenn. Code Ann. § 39-13-601 (Count III); under Tennessee theft of services statutes, Tenn. Code Ann. §§ 39-14-104, 7-59-109 (Count IV); under 18 U.S.C. § 2512(1)(b) for possession of pirate access devices (Count V); and under Tennessee common law for conversion (Count VI).

Defendant McCool now moves for summary judgment on all of Plaintiff's claims. (Docket Entry No. 4). Defendant asserts that Plaintiff's claim under 47 U.S.C. § 605(a) is superseded by Plaintiff's claim under 18 U.S.C. § 2511. Defendant further asserts that DIRECTV has failed to produce direct evidence of Defendant's unlawful interference with DIRECTV's satellite transmission. Plaintiff disagrees, contending that Plaintiff may pursue claims under both §§ 605(a) and 2511, and that circumstantial evidence exists from which a reasonable jury could conclude that Defendant purchased the device in question and used it to intercept DIRECTV's signal. Thus, Plaintiff urges that

2

summary judgment is inappropriate because the trier of fact must assess Defendant's credibility in asserting such a defense and resolve the disputed issue of whether Defendant actually intercepted DIRECTV's satellite signal.

Defendant asserts in his Motion for Summary Judgment that Plaintiff has failed to state a claim upon which relief may granted with respect to Count VI, Plaintiff's conversion claim. Plaintiff maintains that such a claim would be recognized by Tennessee courts. Defendant additionally asserts that 18 U.S.C. § 2520(a) does not provide a private right of action for violations of 18 U.S.C. § 2512(1)(b) and, thus, Plaintiff has failed to state a claim upon which relief can be granted as to Count V. Plaintiff does not respond to this assertion.

## II. PRELIMINARY MATTERS

Two preliminary matters must be addressed before the Court considers Defendant's instant Motion for Summary Judgment. First, Defendant has filed a Motion to Strike an expert report by Michael Barr filed by Plaintiff in support of its response to Defendant's summary judgment motion. (Docket Entry No. 35). Defendant contends that the expert report fails to comply with Federal Rules of Civil Procedure 26(a) and 37(c) because the report is unsigned, fails to state the compensation to be paid for the study and testimony, and fails to provide a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. Defendant further complains that the report makes no reference to this case, does not

3

include the style of the case, and fails to even mention the name of Defendant McCool.  Plaintiff maintains that any noncompliance with the Federal Rules was harmless and, in any event, Plaintiff has since submitted an amended expert report that rectifies the complaints lodged by Defendant.

The Federal Rules of Civil Procedure require that parties disclose their expert witnesses prior to trial.  Fed. R. Civ. P. 26(a)(2)(A).   Rule 26(a)(2)(B) requires that written reports by experts be signed, and:

> [t]he report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B).  Rule 37(c)(1) provides that a party who fails to disclose information required by Rule 26(a) or 26(e)(1) or fails to amend a prior response to discovery as required by Rule 26(e)(2) is not permitted to use such information at trial unless the omission is harmless or the party has a substantial justification for the omission.   Fed. R. Civ. P. 37(c)(1).

Here, Plaintiff informed Defendant of its potential expert witnesses on September 15, 2003, when Plaintiff served Defendant with its Supplemental Rule 26(a) disclosures.  On October 30, 2003,

4

Plaintiff served Defendant with its expert reports.  Although the reports did not fully comply with Rule 26, Defendant makes no argument that he has been prejudiced in any way by the reports' deficiencies.  See White v. Meador, 215 F. Supp. 215 (D. Maine 2002)("Even if [plaintiff's] initial failure to seek compliance with the scheduling order were not a bar to [defendants'] request [to strike plaintiff's designation of expert witnesses], [defendants] have failed to demonstrate any concrete harm from the insufficient designation and tardy provision of [the expert's] report.").  Defendant apparently does not take issue with the substance of the reports or their finding that the primary function of the device shipped to Defendant is the theft of DIRECTV's satellite signal.  Moreover, after Defendant complained to Plaintiff about the reports' technical noncompliance with Rule 26, Plaintiff filed a supplemental report addressing Defendant's concerns.

Over eight months have passed since Defendant learned of Plaintiff's experts, and Defendant made no attempt during that time to depose any of DIRECTV's expert witnesses.  Defendant did not raise his objection until after the discovery deadline had passed and just months before trial.  The Court therefore finds that Defendant failed to timely object to DIRECTV's expert disclosures. See West v. Media Gen. Operations, Inc., 250 F. Supp.2d 923 (E.D. Tenn. 2002)(denying defendants' motion to strike the affidavit of witness submitted in response to summary judgment motion who had not been previously identified in initial disclosures or

interrogatory responses, finding that defendants had known about the witness for three months before objecting and had sufficient time to depose the witness but had failed to do so); White, 215 F. Supp. at 220 (denying defendants' motion to strike plaintiff's designations of its expert witnesses because "none of the moving defendants took an action to seek further information or to notify plaintiff's counsel that they considered the designations to be incomplete in any way. Counsel must give opposing counsel a timely opportunity to remedy omissions in the required designations before seeking assistance from the court in obtaining the necessary information, which should be done well before the close of discovery.").

As the court found in White, "[c]ounsel may not simply sit by until the case has been scheduled for trial and then seek to have an opponent's experts excluded when the basis for that exclusion could have been addressed and remedied months earlier." 215 F. Supp. at 220. In sum, the Court finds that (1) any deficiencies in the expert report provided by Plaintiff were harmless or have since been corrected by Plaintiff; and (2) Defendant did not object to the reports within a reasonable period of time. Under these circumstances, the Court will not employ the drastic remedy of striking Plaintiff's expert report, and Defendant's Motion requesting such relief (Docket Entry No. 35) shall be DENIED.

Defendant also seeks permission from the Court to file a supplemental reply brief in this matter. (Docket Entry No. 39). On May 26, 2004, Plaintiff's counsel filed an unreported decision

6

with the Court in support of its response to Defendant's summary judgment motion. (Docket Entry No. 38). The decision submitted by Plaintiff was authored by this Court and entered on May 20, 2004, in another case brought by DIRECTV against an individual accused of possessing and utilizing a pirate access device. DIRECTV, Inc. v. Rados, No. 03-0972 (M.D. Tenn. May 20, 2004)(Echols, J.). Although the Court granted the individual defendant's motion for summary judgment with respect to DIRECTV's claim under 18 U.S.C. § 2512(1)(b), the Court denied the defendant's motion on all other claims. Id. Defendant McCool contends that the facts of Rados are distinguishable from the facts of his case, and he now wants to supplement his reply brief to Plaintiff's response so that he may "address the issues raised in" the Rados decision. (Docket Entry No. 39 at 2).

The Court is quite familiar with the facts of the Rados case. Plaintiff did not present any arguments along with its submission of the Rados decision, and the Court does not require any briefing on this decision from either party. The parties have already submitted extensive filings with the Court in support of their respective positions. Accordingly, Defendant's Motion for Permission to File Supplemental Reply Brief (Docket Entry No. 39) shall be DENIED.

### III.  FACTS

Viewing the facts in the light most favorable to Plaintiff, as the Court must at this stage of the proceedings, the relevant facts and circumstances are as follows: Plaintiff DIRECTV is the nation's

7

leading direct broadcast system, delivering over 225 channels of television and other programming to more than 10 million homes and businesses in the United States. DIRECTV's television programming currently includes major cable networks, studio movies and special events programming, as well as a variety of sports and other special interests programming. DIRECTV, a California company, has invested more than $1.25 billion to develop its direct broadcast satellite system.

DIRECTV encrypts, or electronically scrambles, its satellite transmissions to provide security for and prevent unauthorized viewing of its satellite television programming. DIRECTV offers its television programming to residential and business customers on a subscription or pay-per-view basis only. Each customer is required to obtain a DIRECTV access card and other system hardware, including a small satellite dish, and create an account with DIRECTV. Upon activation of the access card by DIRECTV, the customer can receive and view in an encrypted, or unscrambled, format those channels to which the customer has subscribed or otherwise made arrangements to purchase from DIRECTV.

A "White Viper Reader-Writer Unlooper Combo" is typically used with various illegal software to provide a variety of reprogramming functions for altering DIRECTV cards. Some of these devices are also capable of reading DIRECTV access cards that have been previously deactivated by an electronic counter measure ("ECM") from DIRECTV due to illegal modification to their internal operations. The unlooper "glitches" past the ECM to allow for

8

viewing of DIRECTV's satellite television programming without authorization by or payment to DIRECTV. ECMs are sent electronically by DIRECTV by satellite and are designed to disable DIRECTV access cards that are being used to obtain DIRECTV programming without payment. A January 21, 2001 ECM, referred to as "Black Sunday" by satellite pirates, was targeted at illegally modified Period Two DIRECTV access cards and resulted in the disabling of a large number of illegally modified cards that were being used to steal DIRECTV's satellite television programming. Unloopers are primarily designed to overcome the effects of the Black Sunday ECM. The unlooper at issue in this case, the "White Viper Reader-Writer Unlooper Combo," is specifically designed to circumvent DIRECTV security controls.

On May 25, 2001, DIRECTV executed writs of seizure at the mail shipping facility used by several major sources of pirate technologies. As a result of the raid, DIRECTV obtained various business records, including orders, invoices, electronic communications, shipping documentation, purchase receipts, credit card receipts, and customer lists.

Defendant Frank McCool, an autoparts deliveryman, is a resident of Goodlettesville, Tennessee. Defendant has had computer training and worked as a computer assisted drafter for two years. According to records seized by DIRECTV, on August 14, 2000, a pirate access device called a "(Combo) Viper Reader/Writer and White" was purchased on-line with Defendant McCool's credit card, from his e-mail address. The device was shipped to Defendant

McCool's home address.   At all times relevant to this action, Defendant possessed the requisite digital system hardware, including a satellite dish, integrated receiver/decoder, and/or programming required to use the illegally modified DIRECTV access card.[2]

According to Defendant, a friend of his named Billy Maxwell purchased the device using Defendant's credit card.   Defendant had met Maxwell a few months earlier at a bar.   Maxwell told Defendant that he had been through a divorce and could not get a credit card of his own.   Defendant allowed Maxwell to purchase items on-line using his computer three or four times.   On one occasion, Maxwell asked to purchase an item that cost $259.00, which Maxwell paid in advance to Defendant.   Defendant then allowed Maxwell to purchase the item on line, using Defendant's credit card, e-mail address, and shipping address. Defendant maintains that he was unaware of the nature of the item.   When the package arrived, Defendant gave Maxwell the package.   Defendant later observed the item, stating that it looked like a small transistor radio.   Maxwell told Defendant that the item went in a computer security system. Defendant states that he never used the device and never suspected that it could be used to intercept or decrypt satellite transmissions.   Defendant has not seen Maxwell since the summer of 2002, when Maxwell told him that he was moving to Erie, Indiana.

---

[2]Defendant cancelled part of his subscription to DIRECTV in October 2000, then purchased a new system from DIRECTV in January 2001.   In April 2002, he increased his programming.

## IV.  STANDARD OF REVIEW UNDER RULE 56

In ruling on a motion for summary judgment, this Court must construe the evidence produced in the light most favorable to the non-moving party, drawing all justifiable inferences in his or her favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A party may obtain summary judgment if the evidentiary material on file shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of satisfying the court that the standards of Rule 56 have been met.  See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986).  The ultimate question to be addressed is whether there exists any genuine issue of material fact which is disputed.  See Anderson, 477 U.S. at 248.  If so, summary judgment dismissal is inappropriate.

To defeat a properly supported motion for summary judgment, an adverse party "must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."  Fed. R. Civ. P. 56(e) (emphasis added).  The Supreme Court explains further than the non-moving party's burden of providing specific facts demonstrating that there remains a genuine issue for trial is triggered once the moving party "show[s]--that is, point[s] out to the district court--that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

11

## V.  APPLICABLE LAW AND ANALYSIS

Plaintiff alleges five claims against Defendant, and Defendant has moved for summary judgment on each of them.  Before addressing the merits of each claim, the Court will address Defendant's contention that Plaintiff's claim under 47 U.S.C. § 605(a) is superceded by Plaintiff's claim under 18 U.S.C. § 2511.

**A.  Plaintiff is entitled to pursue claims under the Federal Communications Act of 1934 and the Electronic Communications Privacy Act.**

Defendant contends that Plaintiff's claim under 47 U.S.C. § 605(a) should be dismissed because it is superseded by Plaintiff's claim under 18 U.S.C. § 2511.  Defendant relies on an unpublished district court decision from New Jersey in support of his contention.  In DIRECTV v. Dougherty, No. 02-5576, 2003 U.S. Dist. LEXIS 23666 (D. N.J. Sept. 10, 2003), the court held that when a plaintiff seeks damages under both 47 U.S.C. § 605(a) and 18 U.S.C. § 2511, a plaintiff may not recover civil remedies for the same conduct under both statutes.  Id. at *10.  In so holding, the court cited a 1983 decision from the Eighth Circuit Court of Appeals and a 1995 district court decision from Connecticut.  Id.

Defendant has not identified any court decisions within the Sixth Circuit in agreement with the Dougherty opinion, and the Court's own research has not revealed any.  It is Plaintiff's position that DIRECTV may recover damages pursuant to violations of both statutes.  The Court need not resolve this issue at this stage of the litigation, however, because Plaintiff asserts that even if DIRECTV cannot recover damages pursuant to violations of

12

both § 605(a) and § 2511, DIRECTV is still entitled to pursue both claims and determine which statute will afford it the greatest amount of damages.

Plaintiff's assertion is well taken. A plaintiff is entitled to submit two or more alternate theories to the jury, review the jury's verdict, and subsequently elect on which theory the plaintiff wishes to recover. <u>Concrete Spaces, Inc. v. Sender</u>, 2 S.W.3d 901, 908-10 (Tenn. 1999)(citing cases). This election of remedies exists because "it would be manifestly unfair to require plaintiffs in such cases to elect before the jury has answered the issues and the trial court has determined whether to treble the compensatory damages found by the jury . . . ." <u>Id.</u> at 908. Thus, it would be inappropriate for the Court to dismiss one of Plaintiff's claims at summary judgment simply because an election of remedies may be required.

**B.** **Count I: Unauthorized Reception of Satellite Signals in Violation of 47 U.S.C. § 605(a)**

In Count I, Plaintiff alleges that Defendant intercepted or assisted others in intercepting its satellite transmissions of television programming without authorization in violation of 47 U.S.C. § 605(a). Section 605(a) makes it unlawful for an unauthorized person "to receive or assist in receiving any interstate or foreign communication by radio and [to] use such communication (or any information therein contained) for his own benefit or for the benefit of another [unauthorized user]."

13

Section 605(a) applies to satellite television transmissions.  <u>See e.g.</u>, <u>Nat'l Satellite Sports, Inc. v. Eliadas, Inc.</u>, 253 F.3d 900, 915-16 (6th Cir. 2001).

Defendant contends that DIRECTV has failed to produce direct evidence of Defendant's unlawful interference with DIRECTV's satellite transmission.   However, DIRECTV is not required to produce such proof.   The undisputed purchase of the device in Defendant's name using his credit card, his computer, his e-mail address, and his shipping address creates a rebuttable presumption of use.   <u>See</u> <u>Cmty. Television Sys., Inc. v. Caruso</u>, 284 F.3d 430, 432 (2d Cir. 2002)(affirming district court's ruling that although there was no direct evidence that defendants used descramblers to illegaly view pay-per-view cable programming, court could presume from defendants' purchase of descramblers that defendants had used such devices); <u>DIRECTV, Inc. v. Jones</u>, No. 02-2834 (W.D. Tenn. Aug. 26, 2003)(Donald, J.)(holding that "Defendant's possession of the device in question leads to a  factual inference, when construed in a light most favorable to Plaintiff, that the alleged interception could have occurred.").[3]

Although Defendant denies that he purchased the device at issue, Plaintiff's evidence shows that an order was placed for the

_____

[3]<u>See also</u> <u>DIRECTV, Inc. v. Trone</u>, No. CV 02-05194 PA (C.D. Cal. Feb. 10, 2003)(granting partial summary judgment in DIRECTV's favor  finding that "there is no evidence before the court that Bootloaders performed any lawful function."); <u>DIRECTV, Inc. v. Hendrix</u>, No. CIV F 02-6493 (E.D. Cal. Sept. 9, 2003)(finding that plaintiff's evidence is such that a reasonable trier of fact could infer that defendant used the devices, thus making summary judgment inappropriate on plaintiff's § 605(a) claims); <u>DIRECTV, Inc. v. Holladay</u>, No. 6:01-cv-0056 (E.D. Tex. Mar. 13, 2003)(same).

14

unlooper by someone using Defendant's credit card and e-mail
address, and that the unlooper was shipped to Defendant's
residential address. Defendant's entire defense rests on his
uncorroborated assertion that someone else was responsible for the
purchase of the device at issue. Defendant's credibility in
asserting such a defense and the question of whether Defendant
actually intercepted DIRECTV's satellite signal in violation of §
605(a) is one for the jury to resolve. Issues of credibility are
to be determined by the jury. See e.g., Carter v. Univ. of Toledo,
349 F.3d 269, 276 (6th Cir. 2003). The purpose of summary judgment
"is not to resolve factual issues, but to determine if there are
genuine issues of fact to be tried." Abercrombie & Fitch Stores,
Inc. v. Am. Eagle Outfitters, Inc., 130 F. Supp.2d 928, 930 (S.D.
Ohio 1999).

The Court finds that Plaintiff has provided evidence, albeit
circumstantial, from which a reasonable jury could determine that
Defendant purchased the device and used it to intercept DIRECTV's
satellite signal. The jury might conclude that it is highly
unlikely that Defendant would permit someone he had met only months
earlier at a bar to use his credit card to make on-line purchases.
It is undisputed that Defendant possessed DIRECTV satellite
equipment at all times relevant to this action. It is also
undisputed that shortly after the purchase of the unlooper using
Defendant's credit card, Defendant downgraded his DIRECTV
programming package from the premium Showscriber package to basic
programming. Defendant has had computer training and worked as a

15

computer assisted drafter for two years.  Thus, the jury could conclude that Defendant had the opportunity, knowledge, and equipment necessary to illegally intercept DIRECTV's satellite signal.

Finally, Plaintiff has submitted the expert report of Michael Barr who found that the White Viper Reader-Writer Unlooper Combo device at issue was specifically designed to circumvent DIRECTV's security controls.  Mr. Barr further concluded that "[u]nloopers have no commercially significant purpose other than to circumvent the DIRECTV access system."  (Attach. A to Docket Entry No.  31). Accordingly, Defendant's Motion for Summary Judgment as to Count I shall be DENIED.

## C.  Count II: Unauthorized Interception of Electronic Communications in Violaton of 18 U.S.C. § 2511(1)

In Count II, Plaintiff alleges that Defendant "intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept" DIRECTV's satellite transmissions of television programming in violation of 18 U.S.C. § 2511(1)(a). Adopted as part of the Electronic Communications Privacy Act, also known as the "Wiretap Act," Section 2511(a)(a) imposes criminal liability upon anyone who "intentionally intercepts, endeavors to intercept, or procures any other persons to intercept, any wire, oral, or electronic communication."  In addition, 18 U.S.C. § 2520(a) creates a private cause of action for violations of Section 2511.  See DIRECTV, Inc. v. Barnes, 302 F. Supp.2d 774, 778 (W.D. Mich. 2004)(citations omitted).

Defendant contends that he is entitled to summary judgment on Count II because Plaintiff cannot establish that Defendant purchased and used the device at issue to unlawfully intercept DIRECTV's satellite transmissions.   As with Count I, Defendant's contentions fail.   As discussed above, the evidence before the Court is sufficient to create a genuine issue of material fact as to whether Defendant violated Section 2511(1)(a).   Accordingly, Defendant's Motion for Summary Judgment as to Count II shall be DENIED.

**D.   Count III:   Unauthorized   Interception   of   Electronic Communication in Violation of Tenn. Code Ann. § 39-13-601**

Count III of the Complaint alleges that Defendant intentionally intercepted, endeavored to intercept, or procured other persons to intercept DIRECTV's satellite transmission of television programming in violation of Tennessee law, specifically Tenn. Code Ann. § 39-13-601.  Count III is essentially a repeat of Counts I and II under state law, and Defendant makes the same arguments in support of his summary judgment motion.  The Court has rejected these arguments, having determined that proof of actual interception is not required when Plaintiff has produced circumstantial evidence sufficient to support the conclusion that there was an actual interception.  The same factors that prevent summary judgment under the federal statutes likewise create questions of fact under the state statute: the purchase of the device using Defendant's credit card, e-mail address, and shipping address; Defendant's possession of equipment necessary to receive

17

DIRECTV's satellite signal; Defendant's downgrading of DIRECTV programming within a month of the purchase of the device; and expert testimony that the device in question was designed to alter DIRECTV access cards and was not designed for any other legitimate purpose. As such, Defendant's Motion for Summary Judgment as to Count III shall be DENIED.

**E.    Count IV:  Theft of Services in Violation of Tenn. Code Ann. §§ 39-14-104, 7-59-109**

Count IV alleges that Defendant possessed and used a pirate access device to decrypt, view, and intentionally obtain DIRECT services by deception, fraud, or other means in an attempt to avoid payment for DIRECTV's programming services in violation of Tennessee law, specifically the Tennessee theft of services statutes at Tenn. Code Ann. §§ 39-14-104 and 7-59-109. Section 39-14-104 of the Tennessee Code prohibits a person from intentionally avoiding payment for services by obtaining those services by means of "deception, fraud, coercion, false pretense, or any other means . . . ." Section 7-59-109 further provides:

> A person also commits theft of services as prohibited by § 39-14-104, who knowingly: (1) obtains or attempts to attain cable television services from a company by trick, artifice, deception, or other fraudulent means with the intent to deprive such company of any or all lawful compensation for rendering each type of service obtained.

Tenn. Code Ann. § 7-59-109(a)(1). Furthermore, merely possessing a device designed to descramble a cable television company's satellite signals with the intention of using the device for theft of cable television services constitutes theft of services under

18

Tennessee law.  _Id._ § 7-59-109(a)(5)(A).  Civil actions by the cable company are permitted by statute.  _Id._ § 7-59-109(c).

Here, a genuine issue of material fact exists as to whether Defendant obtained or attempted to obtain DIRECTV's satellite television programming with the requisite intent to deceive or defraud in violation of Sections 39-14-104 and 7-59-109(a)(1). Further, a genuine issue of material fact exists as to whether Defendant possessed an unlooper device with the intention of using the device for theft of DIRECTV programming in violation of Section 7-59-109(a)(5)(A).  Accordingly, Defendant's Motion for Summary Judgment as to Count IV shall be DENIED.

**F.   Count V: Possession of Pirate Access Devices in Violation of 18 U.S.C. § 2512(1)(b)**

Defendant seeks to dismiss Count V, asserting that federal law does not recognize a private right of action for violation of § 2512(1)(b).  Section 2512(1)(b) subjects to criminal prosecution anyone who intentionally "manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications. . . ."  18 U.S.C. § 2512(1)(b).  Violations of § 2512(1)(b) are punishable by fines and/or up to five years in prison.  _Id._

Section 2512 is solely a criminal statute and contains no civil action authority by its own terms.  To support its claims for

civil remedies in Count V, Plaintiff DIRECTV relies on 18 U.S.C.

§ 2520(a), which provides as follows:

> (a) <u>In general</u>.   Except as provided in section 2511(a)(ii),[4] any person whose wire, oral or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a).  However, there is a split of authority among

the federal courts as to whether § 2520(a) authorizes a civil cause

of action for violations of § 2512(1)(b).

In another case brought by DIRECTV, the Court recently held

that 18 U.S.C. § 2520(a) does <u>not</u> provide a private right of action

for violations of 18 U.S.C. § 2512(1)(b).[5]  <u>DIRECTV, Inc. v. Sean</u>

<u>Wallace</u>, Civ. No. 02-1026, Mem. Op. at pp. 6-13 (M.D. Tenn. Feb. 6,

---

[4]18 U.S.C. § 2511(2)(a)(ii) provides immunity from prosecution for persons who aid or assist governmental agents authorized by law to intercept wire, oral, or electronic communications or conduct electronic surveillance. Section 2511(2)(a)(ii) is not applicable to the instant case.

[5]The Court found that the plain meaning of § 2520(a) requires that an aggrieved person must have suffered an actual illegal interception, disclosure, or use of his or her communications before that person may initiate a civil suit under § 2520(a). Further, that interception, disclosure, or use must have been done in violation of "this chapter," which refers to Chapter 119 (§§ 2510-2521).  Not any interception, disclosure, or use will suffice; only one that specifically violates Chapter 119 triggers civil standing.  A reading of Chapter 119 shows that the only section in the chapter prohibiting illegal interception, disclosure, or use is § 2511.   Thus, the only person who would have § 2520(a) civil standing to sue for a "violation of this chapter" would be a person whose communications were illegally intercepted, disclosed, or used in violation of § 2511.  (<u>See</u> Docket Entry No. 49 in Case No. 3:02-1026, Mem. Op. at pp. 11-12).

20

2004). Other courts have so held and dismissed a plaintiff's claim brought under Section 2512(1)(b) for civil damages. <u>See e.g.</u>, <u>DIRECTV, Inc. v. Kimball</u>, No. 02-2964, 2004 WL 764261, at **2-4 (W.D. Tenn. April 7, 2004)(Donald, J.); <u>DIRECTV, Inc. v. Campagne</u>, Civ. No. 3:02-1199, slip op. at 7-8 (M.D. Tenn. Dec. 9, 2003)(Nixon, J.); <u>DIRECTV, Inc. v. Weese</u>, Civ. No. 1:03-0252, slip op. at 5-7 (E.D. Tenn. Dec. 4, 2003)(Collier, J.); <u>see also</u> <u>DIRECTV, Inc. v. Childers</u>, 274 F. Supp.2d 1287, 1289 (M.D. Ala. 2003); <u>DIRECTV v. Cardona</u>, 275 F. Supp.2d 1357, 1361-62 (M.D. Fla. 2003); <u>DIRECTV, Inc. v. Amato</u>, 269 F. Supp.2d 688, 691 (E.D. Va. 2003); <u>Ages Group, L.P. v. Raytheon Aircraft Co., Inc.</u>, 22 F. Supp.2d 1310, 1315 (M.D. Ala. 1998); <u>DIRECTV, Inc. v. Beecher</u>, Civ. No. 1:03-0309, 2003 U.S. Dist. LEXIS 20128, at *7 (S.D. Ind. Nov. 7, 2003); <u>DIRECTV, Inc. v. Nisbett</u>, Civ. No. 03:61501, slip op. at 2-6 (S.D. Fla. Oct. 9, 2003); <u>DIRECTV, Inc. v. Sanabia</u>, Civ. No. 03-21341, slip op. at 2 (S.D. Fla. Oct. 16, 2003); <u>DIRECTV, Inc. v. Miron</u>, Civ. No. 03-21388, slip op. at 2 (S.D. Fla. Sept. 30, 2003); <u>DIRECTV, Inc. v. Miller</u>, Civ. No. 6:03- 1027, slip op. at 3-6 (M.D. Fla. Sept. 16, 2003); <u>DIRECTV, Inc. v. Westendorf</u>, Civ. No. 3:03-50210, 2003 U.S. Dist. LEXIS 16236, at **2-4 (N.D. Ill. Sept. 16, 2003); <u>DIRECTV, Inc. v. Rodriquez</u>, Civ. No. 6:03-711, slip op. at 3-6 (M.D. Fla. Sept. 9, 2003); <u>DIRECTV, Inc. v. Rendueles</u>, Civ. No. 8:03-1053, slip op. at 2-4 (M.D. Fla. Aug. 27, 2003); <u>DIRECTV, Inc. v. Hutchinson</u>, Civ. No. 8:03-1108, slip op. at 8-10 (M.D. Fla. Aug. 22, 2003); <u>DIRECTV, Inc. v. Treworgy</u>, Civ. No. 2:03-0428, slip op. at 2-5 (M.D. Fla. Aug. 8, 2003); <u>DIRECTV, Inc. v.</u>

Childers, Civ. No. 03-A-517-E, slip op. at 3-5 (M.D. Fla. July 29, 2003).

Accordingly, Defendant's Motion to Dismiss Count V of Plaintiff's Complaint shall be GRANTED.  Count V of the Complaint (Possession of Pirate Access Devices in Violation of 18 U.S.C. § 2512(1)(b)) shall be DISMISSED.

**G.    Count VI:  Conversion**

Count VI of the Complaint alleges that Defendant unlawfully converted DIRECTV's property for his own commercial use and benefit.  Tennessee courts define conversion as "the appropriation of the thing to the party's own use and benefit, by exercise of dominion over it, in defiance of [the] plaintiff's right."  Paehler v. Union Planter's Nat'l Bank, 971 S.W.2d 393, 398 (Tenn. Ct. App. 1997)(citation omitted). Defendant alleges that Tennessee does not recognize a claim of conversion with respect to intangible property and, thus, Plaintiff's conversion claim must be dismissed as a matter of law.  In support of his allegation, Defendant relies on Corporate Catering, Inc. v. Corporate Catering, LLC, No. M1997-00230-COA-R3-CV, 2001 Tenn. App. LEXIS 186 (Tenn. Ct. App. Mar. 20, 2001), in which a section of the Tennessee Court of Appeals declined to recognize a cause of action for conversion of "intangible personal property" in a case involving the alleged copying and use of a catering company's menu.  Id. at **17-20.

The Corporate Catering court based its ruling in part on an earlier decision of the Tennessee Court of Appeals, in which the court held that the plaintiff could not recover for the alleged

22

unlawful conversion of his interest in business relationships. B & L Corp. v. Thomas & Thorngren, Inc., 917 S.W.2d 674, 680 (Tenn. Ct. App. 1995). In support of its holding, the B & L Corp. court cited two cases in which courts refused to allow a cause for conversion of intangible property rights, specifically a distributer's dealer network and goodwill, H.J. Inc. v. Int'l Tel. & Tel. Corp., 867 F.2d 1531, 1548 (8th Cir. 1989), and a supplier's business relationship with a customer, Unlimited Screw Products, Inc. v. Malm, 781 F. Supp. 1121, 1131 (E.D. Va. 1991).

The claims asserted in these cases are distinguishable from the conversion claim asserted by DIRECTV in the instant case. DIRECTV does not contend that Defendant misappropriated, or converted, any customer relationship, goodwill, or the like. DIRECTV's conversion claim instead contends that Defendant unlawfully intercepted DIRECTV's satellite transmission. Defendant's claim is more akin to the claim asserted in MCI Telecomms. v. Bonnell, No. 88-286-II, 1989 WL 19925 (Tenn. Ct. App. Mar. 8, 1989), by a telecommunications company against a juvenile and his father after the company discovered that the juvenile had unlawfully gained access to confidential telephone authorization codes assigned to the plaintiff's customers. The company sued for conversion of MCI's property, among other claims, and the Court of Appeals affirmed the lower court's grant of summary judgment in plaintiff's favor as to liability and reversed as to damages, holding "[a]s to the measure of damages, we are of the opinion that [the defendant's] actions were tantamount to a conversion of MCI's

23

property. While the property had no market value, it had a value to MCI, and the value to MCI is a rational basis for awarding damages under these circumstances." Id. at *3.

The encrypted satellite signals transmitted by DIRECTV are comparable to the confidential telephone authorization codes used by MCI in the Bonnell case. Considering Bonnell as well as the cases cited by Defendant involving goodwill and business relationships, the Court finds that DIRECTV has stated a cause of action for conversion of DIRECTV's satellite transmission. Viewing the evidence in the light most favorable to Plaintiff, as the Court must at this stage of the proceedings, Plaintiff could prove at trial that Defendant's unauthorized unscrambling, interference, or decryption of DIRECTV's signal constituted an appropriation of the signal in defiance of DIRECTV's right, and therefore constitutes conversion. See also DIRECTV v. Jones, Civ. No. 02-2834, slip. op. at 6 (W.D. Tenn. Aug. 26, 2003)(Donald, J.)(denying defendant's motion to dismiss DIRECTV's conversion claim under Tennessee law); Don King Prods. v. Lovato, 911 F. Supp. 419, 422 (N.D. Cal. 1995)(holding that broadcast signal is intangible property of plaintiff for which a claim of conversion can be brought of unauthorized interception of signal). Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's conversion claim under Tennessee law (Count VI of the Complaint) shall be DENIED.

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Docket Entry No. 4) shall be GRANTED IN PART and DENIED

24

IN PART.  In particular, Defendant's Motion shall be GRANTED as to Count III, Possession of a Pirate Access Device in Violation of 18 U.S.C. § 2512(1)(b).  Count III therefore shall be DISMISSED WITH PREJUDICE.  Defendant's Motion shall be DENIED, however, as to Counts I, II, IV, V, and VI of the Complaint.

Further, Defendant's Motion to Strike Expert Report and Bar Expert Testimony (Docket Entry No. 35) shall be DENIED, and Defendant's Motion for Permission to File a Supplemental Reply Brief (Docket Entry No. 39) shall be DENIED.

This case shall be returned to the Magistrate Judge for further proceedings consistent with Local Rule 11.

An appropriate Order shall be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

25

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DIRECTV, Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No.  CIV. B-03-214 |
| | § | |
| LEONEL MARTINEZ | § | |
| | § | |
| Defendant. | § | |

### AFFIDAVIT OF CHRISTOPHER E. MOORE
### IN SUPPORT OF EVIDENCE ON PLAINTIFF'S RESPONSE
### TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF CAMERON | § |

BEFORE ME, the undersigned authority, in the State of Texas, on this day personally appeared CHRISTOPHER E. MOORE, known to me as the person whose name is subscribed to the foregoing Affidavit, and who, being by me first duly sworn, on his oath deposed and stated as follows:

"My name is CHRISTOPHER E. MOORE.  I am over 18 years of age and competent to make this affidavit.

I am an attorney with the firm of Rodriguez, Colvin, Chaney & Saenz, attorneys of record for Plaintiff in the above referenced matter.  In connection with our representation of Plaintiff, I attach the following documents as Exhibit F:

1.    A true and correct copy of Defendant, Leonel Martinez, Answers and Objections to Plaintiff's Request for Interrogatories; and

2.    A true and correct copy of Defendant, Leonel Martinez, Responses to Plaintiff's Request for Admissions.

FURTHER AFFIANT SAITH NAUGHT.

Executed this 3rd day of Sepember, 2004.

_____
Christopher E. Moore

SUBSCRIBED AND SWORN TO BEFORE ME the undersigned authority, on this the 3rd day of September, 2004.

_____
Notary Public for the State of Texas

MARTHA R. HERNANDEZ
MY COMMISSION EXPIRES
September 28, 2008